UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **BENJAMIN HANSEN,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CIVIL NO. SA-14-CA-01070-FB |
| | * | |
| **ALAMO MOBILE X-RAY & EKG** | * | |
| **SERVICES, INC.,** | * | |
| | * | |
| Defendant. | * | |

### MEMORANDUM AND RECOMMENDATION

Benjamin Hansen instituted this lawsuit against his former employer Alamo Mobile X-Ray & EKG Services, Inc. ("Alamo") alleging fraud in that Alamo recruited him based upon false representations that sufficient work existed and alleging that he was terminated in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 *et seq.* Hansen has abandoned his fraud claim. Alamo has filed a motion for summary judgment (docket nos. 20, 22), to which motion Hansen has responded. (Docket no. 21). Having considered the summary judgment evidence, the argument of counsel and the applicable law, the Court is of the opinion Alamo's motion should be granted.

## **Summary Judgment**

Summary judgment shall be rendered if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Rule 56(a), Fed.R.Civ.P.** The plain language of this rule mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id*. at 322-23. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A summary judgment movant or opponent must cite to materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. **Rule 56(c)(1), Fed.R.Civ.P.** An affidavit or

declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify to the matters stated. **Rule 56(c)(4), Fed.R.Civ.P.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, as required by Rule 56(c), the Court may grant summary judgment if the motion and supporting materials show that the movant is entitled to it. **Rule 56(e), Fed.R.Civ.P.** In ruling upon a motion for summary judgment, a court must view the evidence in the light most favorable to the opposing party and all justifiable inferences are to be drawn in his favor. *Tolan v. Cotton*, --- U.S. ---, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014); *Anderson*, 477 U.S. at 255.

## Analysis

In his sole remaining cause of action, Hansen alleges that he was terminated in violation of the USERRA. The USERRA provides: "A person who is a member of ... or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, ... or obligation." **38 U.S.C. § 4311(a).** "An employer shall be considered to have engaged in actions prohibited ... under subsection (a), if the person's

3

membership ... is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership." **38 U.S.C. § 4311(c)**. By referring to a "motivating factor," the statute does not textually suggest that military service be the sole factor. ***Bradberry v. Jefferson Cty., Tex.***, 732 F.3d 540, 545 (5th Cir. 2013). When the company official who makes the decision to take an adverse employment action is personally acting out of hostility to the employee's membership in or obligation to a uniformed service, a motivating factor obviously exists. ***Staub v. Proctor Hosp.***, 562 U.S. 411, 417 (2011).

A Department of Labor regulation states that a plaintiff "has the burden of proving that a status or activity protected by USERRA was one of the reasons" for the employer's decision. **20 C.F.R. § 1002.22**; ***Bradberry***, 732 F.3d at 545. A discriminatory or retaliatory motive must be shown to establish a violation of § 4311. ***Id.***, at 547 (quoting Kathryn Piscitelli and Edward Still, USERRA Manual § 7:5 (West 2012)). If a supervisor performs an act motivated by antimilitary animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA. ***Staub***, 562 U.S. at 422.

4

The USERRA entails a burden shifting test, in which a plaintiff must first establish a prima facie case of discrimination, demonstrating that his participation as a service member was a motivating factor behind the employer's adverse employment action. ***Benitez v. Int'l Paper Co.***, No. EP-06-CA-383-DB, 2007 WL 4436874, at *3 (W.D.Tex. Dec. 19, 2007). An employer's reliance upon, or consideration, or conditioning of its employment decision on an employee's military service constitutes a motivating factor. ***Id***. Once the employee demonstrates the existence of such a factor, the burden shifts to the employer to produce, by a preponderance of the evidence, a legitimate business decision for the adverse action. ***Id***. An employer cannot establish its burden under USERRA by simply proffering evidence that it was motivated, in part, by a legitimate reason. ***Id***. Rather, the employer must show that its legitimate reason, standing alone, was the sole justification for its employment decision. ***Id***.

Alamo hired Hansen as a mobile X-ray technician on September 3, 2013. **Motion for Summary Judgment**, App. p. 2. In that role, Hansen drove a company-supplied mobile X-ray vehicle to health care facilities in Houston and took X-ray images of patients at those facilities. **Id.**, App. p. 4. At the same time, Alamo also hired another mobile X-ray technician, Pedro Estrella. **Id.**, App. p. 3. Hansen and Estrella were Alamo's

5

first mobile X-ray technicians in the Houston market. **Id.**, App. p. 4a.

Hansen first enrolled in the United States Army in 2003. **Response**, Hansen depo. p. 15. In June 2007, he was deployed to Iraq in support of Operation Iraqi Freedom. **Id.** Hansen was honorably released from active duty in June 2008. **Id.**, p. 16. During his deployment, Hansen reenlisted in the United States Army for an additional period and currently serves as a member of the Army Reserves. **Id.**, p. 19.

Hansen discussed his military reserve obligations with Alamo personnel when he was hired. **Motion for Summary Judgment**, App. p. 69. After his supervisor John Weatherford began in October 2013, Hansen discussed these obligations with Weatherford in a general manner. **Id.**, App. p. 29. Sometime in December 2013, Hansen informed Weatherford by phone and text message that he would need some time off in February 2014 to attend a military reserve drill. **Id.**, App. pp. 13, 18.

Hansen cites the following evidence as direct evidence of discrimination that Weatherford terminated him because of his military obligation. *See Mayeaux v. Houston Indep. Sch. Dist.*, 986 F.Supp.2d 842, 849 (S.D.Tex. 2014)(direct evidence of discriminatory animus establishes motivation for termination under USERRA). According to Hansen and his wife Lauren, when he notified Weatherford of the exact days he would need off in

6

February, Weatherford's response was "that's not my problem" and instructed Hansen to "figure it out." **Response**, Hansen depo., p. 53; Lauren Hansen depo., pp. 34-35. Weatherford asked him to work it out with Estrella. **Id.**, exh. 11. Hansen informed Weatherford that Pedro was not able to cover him for his February drill. **Id.**

Weatherford advised defendant's administrator Evan Sagal to notify Hansen that he was being terminated because he was not the "right fit." **Response**, Sagal depo., p. 24. On January 27, 2014, Sagal informed Hansen that Weatherford was terminating him. **Id.**, exh. 8. When Hansen spoke to Weatherford about the reason for his termination, Weatherford said the company was "going in another direction." **Id.**, Hansen depo., p. 68. When Lauren Hansen called Weatherford and asked why Hansen had been terminated, Weatherford stated, "Your husband just irritated me, and his demand for needing his military time off and his cocky attitude in regards to that just irritated me." **Id.**, Lauren Hansen depo. p. 78.

In addition to the direct evidence that Hansen's military service motivated his termination, Hansen cites defendant's employee handbook, in place at the time of Hansen's employment, which includes a progressive disciplinary policy that states the "Company's position on administering equitable and consistent discipline for unsatisfactory conduct in the workplace."

7

**Response**, App. 48. As will be discussed below, Alamo asserts Hansen was terminated for being uncooperative and refusing to comply with Weatherford's directions. The policy provides: Progressive discipline means that, with respect to most disciplinary problems, these steps will normally be followed: a first offense may call for verbal warning; a next offense may be followed by a written warning; another offense may lead to a suspension; and, when still other offenses may occur, then this may lead to termination of employment. **Id.** Hansen points out that, during his employment, he never received any verbal or written warnings until his termination. In ***Machinchick v. PB Power, Inc.***, 398 F.3d 345, 354 n.29 (5th Cir. 2005), evidence that the plaintiff was terminated without being afforded a single verbal or written warning pursuant to defendant's progressive discipline policy created an inference of pretext even though the policy was not mandatory, in light of the fact that the policy specifically stated it should be "followed in most circumstances." Hansen also notes that the timing of his termination, which was in close proximity to the date of his reservist responsibilities, is sufficient to show a prima facie case of discrimination. ***See Robinson v. Morris Moore Chevrolet-Buick, Inc.***, 974 F.Supp. 571, 576 (E.D.Tex. 1997).

Undoubtedly, Hansen has established a prima facie case of discrimination under the USERRA. The burden now shifts to Alamo

to produce, by a preponderance of the evidence, a legitimate business decision for terminating Hansen. **Benitez**, 2007 WL 4436874, at *3. Alamo asserts Hansen was terminated for being uncooperative and refusing to comply with Weatherford's directions. When Hansen and Estrella started, the workload in Houston was light; some days there were no work calls at all. **Motion for Summary Judgment**, App. pp. 5-6. Hansen was rarely busy for a full day. **Id.**, App. p. 6. On or about October 4, 2013, Alamo hired Weatherford to have supervisory authority over its Dallas/Fort Worth, San Antonio, and Houston operations. **Id.**, App. pp. 24, 37. In early October, 2013, Alamo decided to remove one of the mobile X-ray vehicles from Houston and move it to Dallas. **Id.**, App. pp. 7-8. Weatherford instructed Hansen and Estrella to drive their personal vehicles to the office where they would swap out the single mobile X-ray vehicle. **Id.**, App. pp. 30-32. Hansen refused to comply. **Id.**, App. pp. 8a, 31.

In an effort to accommodate Hansen and Estrella, Weatherford suggested using a vehicle with no diagnostics that they could drive between each other's homes to obtain the mobile x-ray vehicle. **Motion for Summary Judgment**, App. p. 32. Hansen continued to refuse to cooperate. **Id.** He would simply park the car at home and would not answer his phone. **Id.** This occurred on multiple occasions. **Id.** Instead, Hansen returned the mobile

X-ray vehicle back to his home. **Id.**, App. pp. 41-42. To obtain the vehicle, Alamo had to pay taxi-cab fare for Estrella to get to Hansen's home to retrieve the vehicle. **Id.**, App. pp. 31-32, 42-43.

Sometime at the end of October or the beginning of November 2013, Weatherford had a conversation with his supervisor, Sam Weinberg, about Hansen's unwillingness to bring the company vehicle back to the central office location. **Motion for Summary Judgment**, App. pp. 44-45, 55-56. During that conversation, Weatherford and Weinberg agreed to terminate Hansen's employment. **Id.** Alamo continued to employ Hansen until it could find and train his replacement. **Id.**, App. pp. 46-47, 57.

Alamo started the process of replacing Hansen by, among other things, posting job ad on Craigslist in November 2013. **Motion for Summary Judgment**, App. p. 34. Hansen saw the ad and immediately knew that Alamo was replacing either him or Estrella because the Houston market could not support a third mobile X-ray technician. **Id.**, App. pp. 11-12. Hansen's wife, Lauren, responded to the ad on November 30, 2013, hoping to "catch John Weatherford in doing something that he wasn't telling Ben [Hansen] about because [she] felt he was sneaky." **Id.**, App. pp. 62-65. Martin Bazan, who also responded to the job advertisement, was hired by Alamo in January 2014. **Id.**, App.

pp. 48-49, 66. A few days later, in late January 2014, Hansen was discharged. **Id.**, App. pp. 14-15, 49.

The Court finds that Alamo has produced sufficient evidence of a legitimate business decision for terminating Hansen. In *Snowman v. IMCO Recycling, Inc.*, 347 F.Supp.2d 338 (N.D. Tex. 2004), the District Court held that the motivating factor element of plaintiff's USERRA claim could not be satisfied, given evidence that the decision to terminate was made prior to plaintiff's conversation with his supervisor about his military service. In this case, the conversation between Weatherford and Weinberg which resulted in the decision to terminate Hansen occurred either at the end of October or the beginning of November 2013. That evidence has not been controverted. It was not until December 2013 that Hansen notified Weatherford of his military commitment in February 2014. Thus, his termination could not have been motivated, to any degree, by Hansen's February 2014 military duty.

In his response, Hansen argues that "Defendant terminated Hansen's position after Weatherford became aware of Hansen's potential military obligations is October 2013." **Response**, p. 12. At that point, Weatherford was aware of Hansen's membership in the Reserves but not the February 2014 obligation. However, in his complaint, Hansen alleges that he was terminated after he notified Alamo of his February 2014 mandatory drill assembly.

11

**Complaint,** p. 2.  He did not allege that he was terminated by Alamo simply because he was a member of the Reserves.  As Hansen states, "It is clear that Plaintiff was terminated by Defendant because of his military commitments to the Army Reserve."  **Id**.  His lawsuit is not based on any contention that Weatherford or anyone else at Alamo had knowledge of Hansen's military status prior to his termination.  *See Snowman*, 347 F.Supp.2d at 343.

In an effort to dispute Alamo's legitimate business decision for terminating him, Hansen asserts that, during his employment with Alamo Mobile, he never had personal knowledge of an office location in the Houston area and that no one at Alamo told him there was an office location in the Houston area.  **Response**, Hansen aff., pp. 52-53.  He claims that, after the mobile X-ray machine vehicle was removed from the Houston market, Weatherford never asked him to drop off the remaining mobile X-ray machine vehicle at an office location, and he never refused to drop off the remaining mobile X-ray machine vehicle at an office location.  **Id**.

The fact remains that it is undisputed that the decision to terminate Hansen was made in late October or early November 2013.  The reason for that decision is immaterial, if that reason was not his military service.  The fact that Hansen had been terminated is substantiated by the Craigslist ad in November 2013 to replace him.  Both Hansen and his wife saw the

12

ad and were suspicious. **Motion for Summary Judgment**, App. pp. 16-17, 63-64. Hansen knew that either he or Estrella was being replaced. Id., pp. 11-12. Alamo was seeking to hire a replacement for Hansen prior to being advised of his February 2014 military commitment. Therefore, Hansen's military service could not have been a motivating factor in his discharge.

Whether Weatherford warned Hansen of any performance deficiencies prior to his termination is irrelevant. It is, at most, a failure to follow policy. It does not establish, in this case, and could not establish that Hansen was terminated because he advised Weatherford of his February 2014 military drill. Also, the fact that Alamo waited three months from the date of the decision to terminate Hansen to notify him also has no relevance. Much of that time was utilized in seeking and training a replacement. As noted twice above, Hansen cannot dispute the evidence that the decision to terminate his employment was made before Alamo was made aware of his February 2014 Reserves duty. Alamo has shown that its legitimate reason, standing alone, was the sole justification for its employment decision. *Benitez*, 2007 WL 4436874, at *3. The Court finds that Alamo has proven that the action it took would have been taken in the absence of Hansen's military commitment.

**RECOMMENDATION**

It is the recommendation of the Magistrate Judge that the Alamo's motion for summary judgment be **GRANTED**.

**Instructions for Service and
Notice of Right to Object**

The District Clerk shall serve a copy of this Memorandum and Recommendation on all parties either electronically or by mailing a copy by certified mail, return receipt requested. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), Fed.R.Civ.P., any party who desires to object to this Memorandum and Recommendation must serve and file specific written objections within 14 days after being served with a copy. Such party shall file the objections with the District Clerk and serve the objections on all other parties and the Magistrate Judge. A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days after being served with a copy shall bar that party from de novo review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of factual findings and legal conclusions to which the party did not object, which were accepted and adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED** February 10, 2016.

_____
**JOHN W. PRIMOMO**
**UNITED STATES MAGISTRATE JUDGE**